ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>V.<br><br>FREDDY SANTIAGO ALICEA<br><br>Apelante | KLAN202400236 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Casos Crim. Núm.: GIS2022G0008 al 0011; GLE2022G0067<br><br>Sobre: Art. 130 A CP-3 Cargos; Art. 133 F CP y Art. 59 Ley 246 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

El 22 de julio de 2024 comparece ante nos Freddy Santiago Alicea (en adelante Sr. Santiago o el apelante) mediante *Recurso de Apelación* solicitando que revoquemos la *Sentencia* del 7 de febrero de 2024, emitida por el Tribunal de Primera Instancia en Guayama (TPI-Guayama). Mediante esta, la parte apelante alega se le condenó a 68 años de prisión y pena de restitución de $10,000.00 por violación a los Artículos 130 (a) y 133 (f) del Código Penal de Puerto Rico y Art. 59 de la Ley 246-2011.

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* recurrida y así modificada se confirma.

## I.

El 28 de octubre de 2021, el Ministerio Público presentó cuatro (4) denuncias por violación a los Artículos 130(a) de

Agresión Sexual,[1] 133(f) de Actos Lascivos,[2] del Código Penal de Puerto Rico de 2012, Ley 146-2012, según enmendada, y violación al Artículo 59 de Maltrato, de la Ley 246-2011, Ley para la Seguridad, Bienestar y Protección de Menores.[3] Esto en relación con una primera querella presentada el 9 de abril de 2021 por alegados actos de violencia y abuso sexual contra las nietas -menores de edad- de su pareja con la que convive.

Luego de encontrarle causa en las vistas de causa probable para arresto y causa probable para juicio, el 27 de mayo de 2022, el aquí apelante presentó escrito titulado *Moción al Amparo de la Regla 95 de Procedimiento Criminal de Puerto Rico*. En esta, en esencia, solicitó copia de un alegado informe preparado por la social o investigadora del Departamento de la Familia y el expediente relacionado a los hechos que se le imputan al Sr. Santiago. Por su parte, el Ministerio Público presentó oposición a la solicitud arguyendo que era información confidencial y, por tanto, protegida.

Tras la presentación de varios escritos por ambas partes, el TPI-Guayama declaró *No Ha Lugar* la solicitud del apelante con relación a la entrega del informe y el expediente. Inconforme, el apelante acudió en alzada a este Tribunal de Apelaciones, quién mediante *Resolución* determinó no expedir el *Recurso de Certiorari.[4]* Motivando a la parte apelante a presentar el mismo recurso ante el Tribunal Supremo de Puerto Rico, siendo denegado nuevamente y devolviendo el caso al TPI-Guayama para la continuación de las labores.

---

[1] 33 LPRA sec. 5191.
[2] 33 LPRA sec. 5194.
[3] 8 LPRA sec. 1174.
[4] Véase *Recurso de Certiorari* con codificación alfanumérica KLCE202300632.

Así las cosas, el TPI-Guayama llevó a cabo el juicio en su fondo los días del 1 al 3 de noviembre y el 13 de noviembre de 2023. Durante el transcurso del juicio el Ministerio Público presentó como testigos a:

1. Sra. Mirna Rivera Maldonado, Agente patrullera de la Policía de Puerto Rico Distrito de Guayama.[5]

2. Sra. Jocelyn Ramos Ortiz, Agente de la Unidad de Delitos Sexuales y Maltrato a menores del Distrito de Guayama.[6]

3. Sra. Lizmarie Román Alicea, madre de las menores.[7]

4. Srta. Sara Angely Román, víctima de 17 años.[8]

5. Srta. Andrealiz Enid Reyes Román, víctima de 14 años.[9]

6. Sra. Roxane Cruz Rodríguez, Técnica de Servicios Sociales de la Unidad de Investigadores Especializados del Departamento de la Familia en Guayama.[10]

Por su parte, la defensa presentó como único testigo a la Sra. Sara Edna Alicea Berríos, pareja del acusado y abuela de las menores.[11] Adicional a esto, objetó parcialmente el testimonio de la Técnico de Servicios Sociales, Sra. Roxane Cruz Rodríguez, tras entender que se le violentó su derecho a refutar el Informe Social realizado por ésta con relación a los hechos pertinentes y, a su vez, acceder a prueba exculpatoria.[12] Es decir, la defensa limitó su estrategia de litigio en la presentación de un (1) testigo, contrainterrogar a los testigos del Ministerio Público y oponerse oportunamente a la decisión de no hacerle entrega del informe de la Técnico de Servicios Sociales.

[5] Transcripción de la Prueba Oral, págs. 18-36.
[6] *Íd*., págs. 37-94.
[7] *Íd*., págs. 95-130.
[8] *Íd*., págs. 139-206.
[9] *Íd*., págs. 211-216.
[10] *Íd*., págs. 230-264.
[11] *Íd*., págs.270-317.
[12] *Íd*., págs. 233-234; Recurso de Apelación, págs. 15-21.

Finalmente, el día 13 de noviembre de 2023, el Tribunal de Primera Instancia en Guayama emitió su fallo encontrando culpable a Freddy Santiago Alicea de todos los cargos. Determinó mediante *Sentencia,* el 7 de febrero de 2024, la pena que debe cumplirse de manera **concurrente** en:

- Cincuenta (50) años de cárcel en cada cargo por Artículo 130.A CP -(3 cargos) en los casos G IS2022G0008, G IS2022G0009, G IS2022G0010 y pena de restitución de $5,000.00 en cada cargo.
- Ocho (8) años de cárcel por el Artículo 133.F CP en el caso GIS2022G0011 y pena de restitución de $5,000.00.
- Diez (10) años de cárcel por Artículo 59 de la Ley 246 en el caso GLE2022G0067
- **Estas penas se cumplirán concurrentes entre sí** y consecutivas con cualquier otra pena que cumpla. **(énfasis suplido).**[13]

Inconforme con la sentencia impuesta, el señor Santiago Alicea recurre ante nosotros el pasado 8 de marzo de 2024 con los siguientes señalamientos de error:

Primero: Erró el honorable tribunal de primera instancia al no permitirle acceso a la defensa del informe social preparado por el departamento de la familia relacionado a los hechos del presente caso, según solicitado en el descubrimiento de prueba negando la oportunidad de auscultar prueba exculpatoria o beneficiosa al acusado en contravención al debido proceso de ley y el derecho de la defensa a prepararse adecuadamente.

Segundo: Erró el honorable tribunal de primera instancia al denegar de forma arbitraria a la defensa el acceso al informe social preparado por el departamento de la familia, aun cuando la técnica social basó su testimonio en el mismo, ello en violación al derecho a confrontar prueba.

Tercero: Erró el honorable tribunal de primera instancia al encontrar culpable al apelante por dos cargos distintos que tipifican como delito la misma conducta bajo los mismos hechos en contravención al principio de especialidad y el derecho constitucional a no ser castigado dos veces por el mismo delito.

Cuarto: Erró el honorable tribunal de primera instancia al encontrar culpable al apelante de todos los cargos presentados, sin el ministerio público haber

---

[13] *Sentencia,* última página del Apéndice del Recurso de Apelación.

establecido más allá de duda razonable su culpabilidad mediante la prueba desfilada en juicio.

**II.**

**A.**

La Constitución de Puerto Rico garantiza a todos los ciudadanos el derecho fundamental a la presunción de inocencia en todo proceso criminal. Art. II, Sec. 11, Const. E.L.A., LPRA, Tomo 1. Para controvertir esta presunción, se le exige al Ministerio Público la presentación de prueba que establezca la culpabilidad del acusado más allá de duda razonable. Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II; Pueblo v. García Colón I, 182 DPR 129, 174 (2011); Pueblo v. Irizarry, 156 DPR 780, 786 (2002); Pueblo v. Cabán Torres, 117 DPR 645, 652 (1986). Ello requiere que el Estado presente prueba suficiente respecto todos los elementos del delito y su conexión con el acusado. Pueblo v. Toro Martínez, 200 DPR 834 (2018); Pueblo v. Casillas, Torres, 190 DPR 398, 413-414 (2014); Pueblo v. García Colón I, *supra*. Para ello, la culpabilidad del acusado no tiene que probarse con certeza matemática. Pueblo v. Toro Martínez, *supra*; Pueblo v. Casillas, Torres, *supra*, pág. 414; Pueblo v. Feliciano Rodríguez, 150 DPR 443, 447 (2000); Pueblo v. Bigio Pastrana, 116 DPR 748, 761 (1985). La evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho. Pueblo v. Chévere Heredia, 139 DPR 1, 16 (1995); Pérez v. Acevedo Quiñones, 100 DPR 894 (1972). El testimonio, de ser creído, es suficiente en derecho para sostener un fallo condenatorio, aun cuando no sea un testimonio "perfecto". Pueblo v. Chévere Heredia, *supra*, pág. 15.

Así que, para superar la duda razonable, lo que se requiere es prueba suficiente que "produzca certeza o convicción moral en

una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. Toro Martínez, *supra*; Pueblo v. Casillas, Torres, *supra*, pág. 414-415; Pueblo v. García Colón I, *supra*, págs. 174-175. En ese sentido, la duda razonable para rebatir la presunción de inocencia reconocida por nuestra Constitución no es una mera duda especulativa o imaginaria, o cualquier duda posible, es la insatisfacción con la prueba lo que se conoce como "duda razonable". Pueblo v. Toro Martínez, *supra*; Pueblo v. Casillas, Torres, *supra,* pág. 415. Más bien, es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso. Pueblo v. Casillas, Torres, *supra,* pág. 415; Pueblo v. García Colón I, *supra*, pág. 175.

En esta función, los jueces de primera instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba y los testimonios presentados, por lo que su apreciación de la prueba merece gran respeto y deferencia por parte de los foros apelativos. Pueblo v. Casillas, Torres, *supra,* pág. 416; Pueblo v. Rodríguez Pagán, 182 DPR 239 (2011); Pueblo v. Acevedo Estrada, 150 DPR 84, 99 (2000); Pueblo v. Echevarría Rodríguez I, 128 DPR 299, 316 (1991). El juzgador de los hechos es "quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad". Pueblo v. Toro Martínez, *supra*, citando a Pueblo v. García Colón I, *supra*, pág. 165, y a Argüello v. Argüello, 155 DPR 62, 78 (2001).

Al enfrentarse a la tarea de revisar cuestiones relativas a convicciones criminales, el Tribunal Supremo ha reiterado que, los tribunales apelativos solo intervendremos con dicha apreciación

cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto. Solo ante la presencia de estos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica o ésta sea inherentemente imposible o increíble, habremos de intervenir con la apreciación efectuada. Pueblo v. Irizarry, *supra*, pág. 788, 789; *véase*, además, Pueblo v. Toro Martínez, *supra*. Así, a menos que existan las situaciones antes señaladas, el tribunal apelativo se abstendrá de intervenir con la apreciación de la prueba. Pueblo v. Acevedo Estrada, *supra*, pág. 86.

*Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado "si de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida".* Pueblo v. Toro Martínez, *supra. Es decir, consideramos que se incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble".* Pueblo v. Toro Martínez, *supra.*

**B.**

En el Artículo II, Sección 7, de la Constitución del territorio, 1 LPRA, dispone que: "Ninguna persona será privada de su libertad o propiedad sin debido proceso de Ley (. . .)". El debido proceso local tiene su homólogo en las Enmiendas V y XIV de la Constitución Federal. El lenguaje de ambas disposiciones constitucionales es idéntico, salvo que, en la nuestra, se eliminó la palabra "vida", como consecuencia de haberse proscrito aquí la pena de muerte. Tanto a nivel federal, como estatal el debido proceso de ley tiende a manifestarse en dos dimensiones distintas,

la sustantiva y la procesal. *Domínguez Castro v. ELA*, 178 DPR 1 (2010).

En ese contexto, el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. Rentas Nieves v. Betancourt, *supra;* Díaz Carrasquillo v. García Padilla, 191 DPR 97 (2014); Domínguez Castro v. E.L.A., 178 DPR 1 (2010); Vázquez González v. Mun. San Juan, 178 DPR 636 (2010).

En cuanto a los trabajadores sociales de la Unidad Social de Relaciones de Familia y Asuntos de Menores de la Rama Judicial, como adelantamos, estos son peritos al servicio del Tribunal. Como tal, están sujetos a las disposiciones que establecen las Reglas de Evidencia. Rentas Nieves v. Betancourt Figueroa, *supra*. En ese contexto, la Regla 709 (a) de Evidencia, 32 LPRA Ap. VI, R. 709 (a), en lo pertinente, establece lo siguiente:

> La persona nombrada como perita deberá notificar a las partes sus hallazgos, si alguno; podrá ser depuesta por cualquier parte y podrá ser citada para testificar, por el tribunal o cualquiera de las partes. La persona nombrada perita estará sujeta a contrainterrogatorio por cualquiera de las partes, incluyendo la que la citó. Rentas Nieves v. Betancourt Figueroa, *supra*.

Claramente, el texto del inciso (a) de la Regla 709 de Evidencia busca proteger esos requisitos mínimos procesales que cobijan a las partes, pues señala que el perito no solo tendrá que notificar sus hallazgos, sino que estará sujeto a contrainterrogatorio con relación a esos hallazgos. Rentas Nieves v. Betancourt, *supra.* A tales efectos, es necesario que las partes afectadas por un Informe de un Trabajador Social puedan formular objeciones al mismo y/o presentar prueba en contra de las conclusiones de dicho Informe. Rentas Nieves v. Betancourt,

*supra.* Asimismo, se ha establecido que los tribunales deben proveer a la parte afectada una oportunidad para formular objeciones o presentar prueba en contra de las conclusiones de dicho informe. *Íd*. Ciertamente, es claro que la Regla 709 (a) de Evidencia, establece una obligación en relación con los peritos, incluyendo los miembros de la Unidad Social de Relaciones de Familia, que obedece al proceso justo e imparcial que exige el debido proceso de ley. *Íd*.

Los hechos en este caso ocurrieron cuando estaba vigente la Ley 246-2011 que ya fue derogada por la Ley 57-2023, pero citaremos la Ley 246, supra, por ser la que aplicaba al momento de atender esta controversia.

El Artículo 26, trata sobre la Confidencialidad de los Informes y Expedientes. 8 LPRA. § 1136. Así, dispone lo siguiente:

> Todos los expedientes relacionados con casos de protección, incluyendo los informes de cualesquiera oficinas, entidades públicas, privadas o privatizadas generados en el cumplimiento de esta Ley, serán confidenciales y no serán revelados, excepto en los casos y circunstancias en que específicamente lo autorice esta Ley.

En cuanto al Artículo 27, se refiere a las Personas con Acceso a Expedientes. 8 LPRA § 1137. En específico, establece lo siguiente:

> Ninguna persona, oficial, funcionario, empleado o agencia tendrá acceso a los expedientes a menos que sea para cumplir con los propósitos directamente relacionados con la administración de esta Ley o por virtud de una orden del tribunal. Vía excepción, podrán tener acceso a los expedientes (sin que necesariamente conlleve la entrega de copias):
>
> a) El funcionario o empleado del Departamento o la agencia que preste los servicios directos cuando sea para llevar a cabo las funciones que le asigna esta Ley.
> b) El Procurador de Asuntos de Familia, el Procurador de Asuntos de Menores, los Fiscales y los Agentes de la Policía de la Unidad Especializada en Delitos Sexuales, Maltrato de Menores y Violencia Doméstica, en todos los

casos que se investigue la comisión de hechos constitutivos de delito relacionados con esta Ley

c) El médico o profesional de la conducta que preste los servicios directos a un menor en casos de protección bajo esta Ley.

d) El tribunal, si se determina que el acceso a los expedientes es necesario para decidir una controversia relacionada con el bienestar del menor; en cuyo caso, dicho acceso estará limitado a la inspección en cámara por el juez.

e) Todo profesional de la conducta o de salud que sea contratado por la Administración de Familias y Niños del Departamento de la Familia y que provea servicios de evaluación, validación y tratamiento de maltrato en la modalidad de abuso sexual a menores de edad, en centros o programas multidisciplinarios afiliados a dicha agencia.

Ninguna persona de las autorizadas a obtener información confidencial conforme se dispone en esta Ley, podrá hacer pública dicha información. No estarán comprendidos en esta prohibición: el sujeto del informe, los Procuradores de Asuntos de Familia, los Fiscales, los Procuradores de Asuntos de Menores o los policías, cuando la información obtenida sea usada para un procedimiento judicial o administrativo.

La información obtenida en virtud de un procedimiento al amparo de esta Ley sólo podrá ser utilizada en beneficio del menor y en casos relacionados con esta Ley. Nada de lo establecido en esta Ley podrá entenderse como que tiene el propósito de alterar las normas y procedimientos relativos a los expedientes del tribunal o del Sistema de Justicia Criminal de Puerto Rico.

**C.**

El principio de especialidad establece que cuando en el ordenamiento jurídico existen dos o más disposiciones estatutarias que regulan en aparente conflicto la misma materia, la disposición especial prevalecerá sobre la general. Pueblo v. Pérez Delgado, 211 DPR 654, 670 (2023); Pueblo v. Hernández Villanueva, 179 DPR 872, 894-897, (2010). Es decir que, bajo este principio, no existe discreción del Estado para decidir por cuál delito debe acusar, sino que hace mandatorio la aplicación del estatuto especial sobre el general. Pueblo v. Pérez Delgado, *supra*, en la pág. 670; Pueblo v. Hernández Villanueva, *supra*, en las págs. 894-895.

Ahora bien, cuando la conducta prohibida y los elementos de ambos delitos, en esencia, aparenten ser los mismos, la relación de especialidad se determinará basada en las características y el propósito de ambos estatutos. Pueblo v. Pérez Delgado, *supra*, en la pág. 670. De esta forma, el Tribunal debe cavilar sobre si una de las disposiciones estatutarias recibió -en efecto- un trato especial diseñado específicamente para la situación comprendida. Íd. De manera que no se puede considerar una ley como especial meramente por haber sido aprobada fuera del código penal. Íd. Así las cosas, se requiere de un análisis que examine la pretensión y el trato que tuvo la Asamblea Legislativa con esa pieza. De esta forma, si el trato especial que tuvo esa legislación está específicamente diseñado para la situación imputada, en efecto, nos encontramos ante una legislación especial. Íd.

**D.**

En Puerto Rico, el Estado y nuestro ordenamiento jurídico, por su vulnerabilidad ante los adultos, se busca proteger a la niñez en gran medida. Esto se ha visto a través de diversas legislaciones. Se ha tipificado, no solo el maltrato, sino también toda violencia y abuso sexual contra estos. Estableciendo penas y responsabilidades mayores cuando la víctima es un menor y el victimario un adulto.

En este sentido, por ejemplo, el Artículo 130 inciso (a) sobre Agresión Sexual, en el Código Penal del 2012, 33 LPRA sec. 5191, tipifica la agresión sexual contra un menor de 16 años. Este estatuto establece que será penalizada toda persona que, a propósito, con conocimiento o temerariamente, lleve a cabo, o que provoque que otra persona lleve a cabo, un acto orogenital o una penetración sexual vaginal o anal ya sea ésta genital,

digital, o instrumental. Específicamente, en su inciso (a), establece que esa conducta será sancionada de suceder en las circunstancias en que la víctima, al momento del hecho, no haya cumplido dieciséis (16) años. La pena de incurrir en este delito será una de reclusión por un término fijo de cincuenta (50) años, que deberá cumplir en años naturales, más la pena de restitución, salvo que la víctima renuncie a ello.

Por otro lado, en el Artículo 133 (f), del Código Penal 2012, 33 LPRA sec. 5194, penaliza con término fijo de reclusión de ocho (8) años y pena de restitución a todo aquel que, a propósito, con conocimiento o temerariamente, pero que, sin intención de consumar el delito de agresión sexual, someta a otra persona a un acto que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado, en determinadas circunstancias. Entre esas circunstancias, el inciso (f) establece la de que el acusado tenga una relación de parentesco con la víctima, por ser ascendiente o descendiente, por consanguinidad, adopción o afinidad, o colateral por consanguinidad o adopción, hasta el tercer grado, o por compartir o poseer la custodia física o patria potestad.

Así también, por otro lado, la legislatura ha aprobado históricamente leyes enfocadas a la protección de los menores, como lo es el caso de la Ley Número 246-2011, mejor conocida como "Ley para la Seguridad, Bienestar y Protección de Menores", como antes indicamos, ya derogada por la Ley 57-2023. Esta ley 246, aplicable a estos hechos, en su Artículo 59, 8 LPRA sec. 1174, establece que todo padre, madre o persona responsable por el bienestar de un menor o cualquier otra persona que por acción u omisión intencional incurra en conducta constitutiva de violencia doméstica en presencia de menores, en abuso sexual, en conducta

obscena o la utilización de un menor para ejecutar conducta obscena, será sancionado con pena de reclusión por un término fijo de diez (10) años.

**III.**

Por encontrarse relacionados entre sí, se discutirán el primer señalamiento de error en conjunto con el segundo, y el tercero en conjunto con el cuarto.

En el primer y segundo señalamiento de error, aduce el apelante que incurrió el TPI-Guayama, tras no permitirle y negarle acceso al informe social preparado por el Departamento de la Familia. Aduciendo que, al así hacerlo, se le violentó su derecho a confrontar la prueba y a auscultar prueba exculpatoria, en violación a su debido proceso de ley. Sobre este particular no le asiste la razón, veamos.

No cabe duda de que la derogada Ley 246-2011, Ley para la Seguridad, Bienestar y Protección de Menores, según enmendada, aplicable a este caso establece la confidencialidad de los informes realizados a estos menores que, bajo el poder de *parens patrie*, el Estado busca proteger. En este sentido, se contraponen dos derechos fundamentales, el del debido proceso de ley del acusado y el de *parens patrie* en protección del menor, como parte de una población vulnerable. Para garantizar los derechos de los acusados, pero también el bienestar de los menores, el legislador reguló la forma en la que se puede acceder a esta documentación protegida y confidencial.

En cuanto al acceso a estos informes frente al tribunal, la ley establece que se tendrá si el tribunal determina que el acceso a los expedientes es necesario para decidir una controversia relacionada **con el bienestar del menor**; en cuyo caso, dicho acceso estará limitado a la inspección en cámara por el juez. Por

otro lado, **también establece que se podrá tener acceso a este si es utilizado en el proceso judicial**.

Ahora bien, el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte. Ese derecho a contrainterrogar incluye el derecho a refutar la prueba documental. Es decir, que incluye el derecho a debatir la veracidad de un informe que es utilizado en evidencia para probar su culpabilidad. En este sentido, también es claro que de probarse que dicho informe pueda contener prueba exculpatoria, tendría derecho el acusado a hacerse de él.

Sin embargo, de un análisis del expediente y la transcripción de la vista, se puede constatar que este informe no fue utilizado en el proceso judicial y, por lo tanto, no tiene influencia alguna en la determinación de culpabilidad. De igual forma, la parte apelante no presenta argumentos que convenzan a este Tribunal de que dicho informe contiene o puede contener información que conduzca razonablemente a determinar un veredicto distinto. Esos errores no se cometieron.

Sobre el tercer y cuarto señalamiento de error, el apelado, en esencia, aduce que incurrió en error el Tribunal de Primera instancia tras encontrarle culpable (1) por dos cargos distintos que tipifican, según él, el mismo delito violentando sus derechos constitucionales y el principio de especialidad (Art. 133(f), Código Penal, y Art. 59 de la Ley 246-2011) y (2) de todos los cargos basado en la prueba desfilada sin que, a su parecer, se demostrara más allá de duda razonable.

Es harto conocido que, en Puerto Rico, la duda razonable es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso. Es decir, cuando la prueba documental levante esa duda, o en el caso de recaer sobre un testimonio, que este no tenga credibilidad. Sin embargo, lo cierto es que el testimonio que merezca entero crédito será prueba suficiente de cualquier hecho, aun cuando no sea un testimonio "perfecto". Lo importante es que de los testimonios se desprenda la comisión del delito por el acusado y la credibilidad que le brinde el juzgador a estos. Así que, para superar la duda razonable, lo que se requiere es prueba suficiente que produzca certeza o convicción moral en una conciencia exenta de preocupación.

Mientras que, sobre el principio de especialidad, lo esencial es la existencia de una ley **con trato especial** sobre la legislación general y la similitud de la conducta prohibida y los elementos de los delitos. Eso sí, cuando estos -en esencia- aparenten ser los mismos, la relación de especialidad se determinará basada en las características y el propósito de ambos estatutos. En este sentido, no basta con que sea una ley promulgada fuera del código penal, hay que probar su trato especial sobre la ley general.

Sobre el Art. 130 (a) del Código Penal, este penaliza que toda persona cometa el acto de provocar o **llevar a cabo contra un menor de 16 años un acto orogenital o penetración vaginal**, ya sea esta genital, digital o instrumental. El Art. 133 (f), por su parte, penaliza la conducta de toda persona con **relación de parentesco con la victima** que, sin ánimos de consumar el delito de agresión sexual del Art. 130, le someta a actos que tienda a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado. Estableciendo los grados de

parentesco hasta el tercer grado. Mientras que, el Art. 59 de la Ley 246-2011, tipifica el maltrato a un menor de edad contra cualquier persona tras causarle daño o ponerle en riesgo de sufrir daño a su salud, integridad física, mental o emocional mediante una acción u omisión intencional por conducta sexual u obscena de abuso sexual.

De nuestra evaluación del expediente y la transcripción de la vista encontramos varios hechos que consideramos esenciales para el análisis de estos señalamientos. Pues, del testimonio de las menores y otras testigos, en especial, el testimonio de la menor Sara Angely Román, se desprende la comisión de los elementos de los delitos de Agresión Sexual y Maltrato, según tipificados en el Art 130(a) del Código Penal y el Art. 59 de la Ley 246-2011, *supra*, respectivamente. Incluso, la menor en su testimonio brindó detalles de los meses, años y lugares (o zonas específicas en la residencia) donde ocurrieron los hechos, identificó al imputado y narró lo que el imputado le hizo y le dijo. La tocaba, le rozó el miembro erecto entre sus muslos y, en varias ocasiones, le introdujo el dedo por un rato en su vagina cuando ella era menor de edad. Estos son los hechos esenciales que se tenían que probar para que se configurasen los respectivos delitos de agresión sexual y maltrato. El relato de la menor fue cónsono a las acusaciones y los elementos de los delitos de Agresión Sexual y Maltrato.

No obstante, también se desprende de la transcripción que no se cumplió con los elementos del Art. 133 (f) del Código penal, tras reiterarse en varias ocasiones que el acusado no tenía vinculo ni relación de parentesco con las víctimas. La condición de parentesco por afinidad la brinda el matrimonio, mientras, que la de adopción o consanguineidad, por causa de la filiación ya sea

natural o adoptiva. En la transcripción de la vista diferentes testigos -incluyendo a las víctimas- reiteran una y otra vez que el acusado solo convivía con la abuela, pero no eran familia ni estaban casados legalmente.[14]

Así las cosas, no habiéndose cometido violación al Art. 133 (f) del Código Penal, no encontramos necesario entrar sobre los méritos del señalamiento de error en el que se aduce violación al principio de especialidad tras encontrarse culpable por violación al Art. 133 (f) del Código Penal y Art. 59 de la Ley 246-2011.

Por los fundamentos esbozados, nos resulta forzoso modificar la sentencia, eliminándose la convicción por el delito de Actos Lascivos tipificado en el Art. 133(f), Código Penal, supra, y habiéndose otorgado credibilidad a los testimonios que confirman la comisión de los otros dos delitos y sus elementos, confirmamos el resto de la sentencia sobre la culpabilidad en los 3 cargos por violación al Art. 130(a) del Código Penal, supra, y 1 cargo por violación al Art. 59 de la Ley 246-2011, supra.

## IV.

Por todo lo anterior, cuyos fundamentos hacemos formar parte de esta sentencia, modificamos aquella parte de la Sentencia y dejamos sin efecto la convicción por el delito de Actos Lascivos según tipificado en el Art. 133(f), Código Penal, supra. Confirmamos y mantenemos inalterada el resto de la sentencia sobre la culpabilidad en los 3 cargos por violación al Art. 130(a) del Código Penal, supra, y 1 cargo por violación al Art. 59 de la Ley 246-2011, supra. Lo que implica mantener la pena que debe cumplirse de manera **concurrente** en:

- Cincuenta (50) años de cárcel en cada cargo por Artículo 130.A CP -(3 cargos) en los casos G

---

[14] Transcripción de la Vista, pág. 97 línea 13, 29, 31 y 33; pág. 140 línea 41-44; y pág. 272 línea 16-23.

IS2022G0008, G IS2022G0009, G IS2022G0010 y pena de restitución de $5,000.00 en cada cargo.

- Diez (10) años de cárcel por Artículo 59 de la Ley 246 en el caso GLE2022G0067
- **Estas penas se cumplirán concurrentes entre sí** y consecutivas con cualquier otra pena que cumpla. **(énfasis suplido).**[15]

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Ver Sentencia del TPI, última página del Apéndice del Recurso de Apelación.